We will now hear arguments in Perez-Mar v. Garland, and I believe Mr. Stanton is appearing virtually. Can you hear us, Mr. Stanton? To the extent that, yes, your honor, the captioning is working good. I very much apologize and beg the court's pardon for the difficulties. That's never happened to me before. I was trying for half an hour to log on, and then five minutes of the argument, it worked. I thank the court's staff very much for their assistance and patience. Thank you. Okay, so we will start. Mr. Herr? Counsel will have 15 minutes per side. Good morning, may it please the court. I am Michael Kuehnherr with the Northwest Immigrant Rights Project, and I represent the petitioner, Mr. Jesse Perez-Mar. I would like to reserve three minutes for rebuttal. The agency committed multiple reversible errors in denying Mr. Perez-Mar's asylum, withholding, and cat relief applications. First, in analyzing whether Mr. Perez-Mar's proposed social groups are legally cognizable, the agency legally erred by disregarding this court's directly controlling precedent, Acevedo the wrong legal analysis. The agency also legally erred by failing to properly consider all of the evidence before it. Under the court's precedent, each of these legal errors is sufficient to warrant a remand. Second, the board wrongly concluded that Mr. Perez-Mar had waived any challenge to the IJ's nexus determination. In his BIA brief, Mr. Perez-Mar unambiguously challenged the IJ's denial of asylum and withholding of removal, and requested that the board overturn the denial. Where did it address the nexus? Pardon, Your Honor? In your brief, did you address nexus? Were you briefed to the BIA? In our opening brief, Your Honor? Your brief to the BIA, where did you address nexus? The BIA, so we're bound by the BIA's decision, the BIA's decision says, you've waived this because you didn't address anything the IJ said about nexus. So where in your brief to the BIA did you address nexus? I see that you recited nexus when you summarized what the IJ had found. When it came to your argument, I couldn't find anything about nexus. Your Honor, the brief before, Mr. Perez-Mar's brief before the board didn't specifically raise any specific arguments about nexus. But under this Court's binding precedent, like Zhang v. Ashcroft and Aiden v. Holder, it was enough that he says the IJ erred in denying asylum and withholding of removal. I think that would be, so I did go through each of the citations that you mentioned in your BIA brief, and like Judge Breyer, I couldn't find any nexus except kind of in the factual section. So under the rule you proposed, he could have stopped with the first paragraph, which basically says we request the board overturn the decision and grant asylum withholding removal in CAT. So is it true that under your proposal, that's, we could stop the brief right there because he's put the BIA on notice that he challenges the IJ decision? Well, Your Honor, it's not a rule that I proposed. It's a rule that this Court has held is the rule for, to exhaust an issue. So let me give an example. Because I don't see that Zhang, which I think is a CAT case, and of course a different construct in CAT, I don't see that that answers the question. So it would help if you had other cases, because otherwise I think we're left with all you have to do is throw it up and hope it sticks, and you don't even have to make an argument about it. At that point, you're inviting the BIA to make up your argument, and then you come to us and complain that they didn't make the right argument. So let me, but let me give you, let me give you some more detail. The IJ made four specific findings that I could find in his paragraphs on nexus. He said there was no evidence that your client was harmed while he lived in Mexico. There were no, he had no problems while he was in the United States, despite his severe schizophrenia because he gets along, he seems to get along well with everyone. There was no evidence he couldn't obtain medications in Mexico, and he could relocate to an area where he could obtain appropriate treatment. Those are four very specific findings, and I didn't even see that you even addressed those in your brief or reply brief. You spent pages, I'm looking at your, at both of those briefs, and you spent pages assuring us that you didn't waive this, and you haven't said a word about any of those findings. Are you asking us to make up your arguments for you? No, Your Honor. The reason why we didn't address the nexus issue on the merits is because, because the BIA didn't rely, make a ruling on nexus under this court's case law. I think Judge Bybee is asking about your brief to the BIA. Where in your brief to the BIA did you address each of these specific findings with respect to the IJ's determination on nexus? Okay. I thought he was asking also about our opening and reply brief. Was that not the case? I was also asking about your briefs here to us. And my frustration is you didn't address the IJ's findings to the BIA, and now you're faulting the BIA for not addressing those things, but they would have to make up your arguments. But you didn't even bother to tell us anything about the merits of those, knowing that the BIA said, you've waived this. All you wanted to do was argue and say, no, I didn't waive it, but you haven't addressed it, which suggests that because there's no finding whatsoever, you just get an automatic remand and a second opportunity to make up all of the arguments that you didn't make. And you haven't made them at any point to either the BIA or this court. And as you can tell, that leaves me a little frustrated. Can I just say, when we're saying you collectively, we recognize that you are not the lawyer on  Okay. I appreciate that, Your Honor. So, Your Honor, to answer your question in reverse, the reason why we didn't address the merits of nexus in our opening and reply briefs is because this court's review is limited to those grounds explicitly relied upon by the board. And because the board made no finding, the court can't address the nexus issue on the merits. That's why we didn't think it was appropriate to address nexus on the merits in our briefs. As for your initial question, so here, as we explain in our brief, Mr. Peresmar actually did more than just say the IJ erred in denying asylum and withholding. And here, he raised specific arguments about whether his PSGs are legally cognizable, which an issue that's inextricably intertwined with the issue of nexus, i.e., whether he would be persecuted on account of his membership in those groups. And in particular, I want to point out, Judge Bybee, the issue of social distinction is very closely bound up with all the IJ findings you just mentioned, because all the evidence that goes to support a finding of social distinction for his groups demonstrate that members of his proposed groups have long been systematically persecuted in Mexico due to, you know, the institutionalization, et cetera. So it's the same evidence that undergirds social distinction. Now you're asking for simply a per se rule. That is, if we approve the PSG, then he wins. But that's why nexus is important, is to show that he really is a member of that group. And it also helps us understand whether that group is actually going to be persecuted. And the evidence that the IJ had was that despite his severe schizophrenia, and nobody is doubting that this man has real problems, that there's no evidence that he was ever persecuted in Mexico, not even any problems that he was maladjusted in the United States. He held employment despite his disabilities. He seemed to be as responsible as he could. And the IJ made other findings. That's why it's so frustrating not to have you say one word about any of those findings. Your Honor, again, I would point the court back to the court's precedent, like Zhang and Aiden, where the court held that even for a counseled, for example, in Aiden, even for a counseled petitioner who was represented by an attorney before the agency, where they said that where the brief made a single mention of denial of CAT relief in the conclusion of the brief, this court held that was enough to exhaust all issues related to CAT. And that's a published decision of this court, Your Honor. And under cases like Zhang and Aiden, it was enough. What Mr. Perez-Mar did here before the board was enough. And actually, he went further than what was required by raising specific arguments about PSG cognizability, which I admit is a separate issue from Nexus, but it's inextricably tied to the issue of Nexus here. So, let's just say, hypothetically, that one of your PSGs has some viability, perhaps theoretic behavior one seems to mostly closely track our case law. So, even if that had some legs, you're saying that that alone would be enough for a remand, even though there's also been a finding that there's no Nexus on any of these? Your Honor, there should be a remand because, both because the board erred in finding that his proposed groups were not cognizable, but also because the board erred in refusing to pass judgment on the Nexus issue. What is the standard of review that you use to determine that the BIA erred? Your Honor, it would be... I believe a de novo review should apply because whether an issue was exhausted or waived is a legal issue that should be reviewed de novo, I believe. See, I don't understand why the BIA, he's got three proposed groups and the BIA says, one, two, three, none of those carry any weight. Why would the BIA need to go any further in even addressing Nexus? Because what the IJ did is what IJs often do is kind of bootstrap and say, well, if you disagree with me on that, there's also this Nexus requirement. And so, even assuming, I conclude there's no Nexus. But that's a secondary conclusion or an additional conclusion. So why, you said the BIA erred in not addressing Nexus. Why would it need to address Nexus when it says none of those groups pass muster? Your Honor, I, you know, I was actually thinking the opposite too, Your Honor, because if the board had truly believed that the Nexus issue was waived, which is an independently sufficient grounds for denying relief, it did not need to go through the very, you know, the robust analysis of, detailed analysis of PSG cognizability. And I think it did that in kind of deference to the petitioner because that was all his brief was about. So if they didn't do that, you'd be up here telling us that they blew off his brief and didn't even consider what some of these substantive issues were. So I'm still kind of confused why if none of those three pass muster with the BIA, why would they need to go any further? They do not need to go any further if they choose not to. But the board, just like the IEJ, often does choose to address, you know, produce alternative holdings, Your Honor. And I think that is a possibility here. And because, and I believe because Mr. Perez-Mar said the IEJ's denial of asylum and withholding was erroneous and asked the board to reverse that denial and grant him relief, and for him to be granted relief, the board would have needed to pass judgment on Nexus because it's one of the required elements for the forms of relief that he sought. So because he asked for a reversal and for the board to grant relief, the board, you know, the board had a responsibility to address Nexus. Counsel, would you like to reserve the balance of your time? Yes, Your Honor. Thank you so much. Mr. Stanton? May it please the Court. Judge McEwen, I don't know, I know you hear a lot of cases, and it's difficult to remember attorneys who have appeared before you, but I appeared before a panel in which you were the Brazilian judge in Seattle in 2018, involving very, very similar, if not identical, unfortunate and sympathetic facts as the instant case. The case was Clemente Pichio. It resulted in an unpublished opinion in 2018. It sat in the petitioner's brief. And probably because I had that type of experience, I was assigned to do the argument in this case. The briefing attorney left our office a month ago, so we needed someone else to argue the case. And so because of, presumably, my prior experience, I was asked to do it. I said yes. I wasn't able to fly out to Seattle. I'm sorry. My wife is traveling this week. But in any event, every time a new attorney takes over a brief that he or she didn't write, there's always a feeling, you know, I wish I could have mentioned another case that's really pertinent here that was not mentioned in our brief. So I hope the court can indulge me a little bit. The case in particular I would have cited, called Honchara v. Barr, 2019 decision 924F31293. In footnote 2 of that brief, the court makes very clear that waiver and exhaustion are two separate inquiries and concepts. Other courts elaborate more, but at least the court here recognized the point. The court also recognized that waiver and forfeiture are important procedural tools for both judicial and administrative review. And with respect to Justice Saez's question, to the extent you were asking what the standard review is of a waiver finding, the court said it was not going to decide that issue. But other courts of appeal have reviewed the board's waiver findings for abuse of discretion, which I would respect is probably appropriate here since waiver is a discretionary doctrine. I mean, the court has, I mean, in other contexts talked about the importance of waiver. I mean, there's many decisions. One of the seminal ones is Independent Towers of Washington v. Washington, a 2003 decision written by Judge McEwen as well. And the sentiments expressed in that opinion about waiver, the importance of actually setting forth arguments for an advocacy purposes applies with equal force to the administrative context. The Independent Towers Court was talking about waiver and the district court litigation. But, I mean, they made these are not, I mean, difficult concepts. I mean, the board, like district judges, are busy people. And they need attorneys, especially counsel attorneys I'm talking about, like petitioner here, to actually set forth the arguments and actually litigate. So that's one difference between waiver and exalt. Counsel, there is a difference between waiver and forfeiture. And it's, I think the board would have been better advised to have used the word forfeited rather than waived. Waived usually says is a conscious decision, usually an open decision before the court that I'm not going to make an argument. This appears to be an argument that's forfeited. Does that make a difference in your analysis? Well, I mean, I understand what you're saying, Judge Bidey. But at the end of the day, it's still the same. It's still the same basic inquiry. But to actually avoid either waiver or forfeiture, you can't just mention an argument. If you had said the immigration judge got nexus wrong, that arguably would have exalted the issue. But it wouldn't have avoided either waiver or forfeiture because you got to actually litigate. What is your response? So let's just assume for a moment that we accept your friend on the other side's argument that this is a de novo review. And we look back at the three particular references that he cited in the brief that talks about the specific language for nexus. And even though there's not a direct argument made that the IJ erred with respect to the nexus determination, what do you say about the argument that our cases in the circuit generally allow for the references that were made, and that's sufficient? Well, I mean, the case I cited, Huncher, specifically declined to set forth the standard of review. Are you asking me about just waivers? Well, Huncherov says that we're not deciding the standard of review. In fact, it leaves that question to another day. So I'm asking if we accept the standard of review as a de novo review, and we are not giving deference to the BIA decision, but we go directly to the briefs and see that these general statements were made with respect to the nexus standard, is that enough? I mean, for a de novo review, I mean, like I'll submit under any standard review, he said nothing about nexus. Let me rephrase that. He did not provide the agency with any reasons why the immigration judge got it wrong. If he was talking about facts, he didn't provide any facts why the nexus determination was wrong. If he was talking about law, he didn't provide any legal standards as to how the nexus determination was legally wrong. I mean, he did nothing. I mean, I understand the brief. I mean, the counsel's point would have been silly for his counsel before the agency not to have made a nexus argument to the board. But, I mean, we see this. It's not uncommon. And Petitioner does have a remedy. He could file a motion to reopen, claiming ineffective assistance of counsel. If someone just doesn't mention an issue, a responsive issue at all, that's usually what we're talking about for ineffective assistance. But to the extent that he can try to argue that the nexus issue was somehow preserved, I mean, or not forfeited or exhausted, maybe, maybe. But I wouldn't even go that far either. But, again, the standards for waiver, well, I'm sorry, forfeiture and exhaustion are just, there's overlap. There's definitely overlap. But they are not determinants. They're not the exact same thing. Again, he could arguably just mention an issue and it would be exhausted. But if you don't actually develop it. I think that one of the strongest cases here is the Zhang case. And that was brought up again in the 28J letter, contrasting that to a more recent case, which basically said that mentioning CAT was enough to preserve the denial of CAT relief. So how do you square that case with the position that, as here, mentioning that petitioner was challenging the agency decision on asylum? Well, I mean, for one thing, asylum, of course, has several dispositive elements. I mean, CAT's got, I mean, two elements. And I'm trying to remember what exactly Zhang said. I should know. I apologize. But I do know that there is no shortage of authority from this court that support the proposition that both you and Judge Bybee were saying that merely mentioning CAT or challenging one element is not enough to exhaust the claim. Well, when the agency found that the claim was sufficient for several dispositive elements. I mean, again, I also say that this is, even if it were, this is also like a forfeiture issue as well. Like, administrative judges or federal judges cannot expect counsel to do the work for them. I mean, the classic maxim, I think, is judges are not like pigs. Churchie Betruffel's hidden the briefs and record. So judges, both federal judges and administrative judges, should expect counsel to set forth the argument. So the decision makers can devote their time efficiently to determine whether a claim is merit or not. And then not having to let go, create arguments for them. So I hope that answers your question. Well, it doesn't. Because you didn't really address Zhang and why we shouldn't take it at face value. But that's your choice. I mean, I will say that this court's exhaustion cases, I mean, the court hears so many cases that I'm trying to, I should be more familiar with the specifics of the Zhang case. But, again, there are, I mean, if you do a search, a computer search for nexus within 15, exhaust or unexhaust, you will come up with examples where this court and other courts have found, like, a nexus issue to be unexhausted, but it was not mentioned in any form from the administrative agency. So, I mean, I mean. Well, I mean, the reason that Zhang is important is because on October 10, there was an additional letter filed with supplemental authority. So it's not just one of our 8,000 immigration cases that we have every year. So. I understand. I probably should have been. But, yes. Anyway. But if there's any other questions with respect to waiver forfeiture, I'm also prepared to discuss the PSGs on the merits as well as CAT. So, I mean, one counsel argues that this court and the agency have been inconsistent with respect to connectability of very similar mentally ill people in Mexico. I mean, some say it's connectable. Others say don't. This was an argument in the Clemente Pacheco case, Judge McEwen. And I think I have a theory as to what's going on here. The key here is the word abandonos, the Spanish word for abandoned. I mean, so I think what's going on. Now, some cases say that's not just for evidence that Mexican society considers this group distinct. Others say, no, it's not. And I think what's going on, if you read the actual report from the Disability Rights Initiative, they make clear that they're not just talking about mentally ill patients in institutions when they're talking about the abandoned ones. I mean, there's a very diverse and diffuse group that are put, sadly, into the Mexican institutions, shelters, orphanages, which they're all considered abandoned if they don't have family support. I mean, page 337 on the administrative record, they talk about blind people. Page 375, 454 and 55, people with cerebral palsy are being abused. Page 353, orphans, homeless children, abused children. 367, I mean, this is one of my favorites. The police are taking homeless people over to the mental institutions because they just want to get them off the streets. The people in the mental institutions, the doctors say, we don't want these people. They don't have mental disabilities. Why are you giving them to us? The police keep on doing it. So they get considered part of the abandoned one as well. Just last year, this court in the case, I don't know if I'm pronouncing it correctly. Allegiance begins with an I. It's cited at the bottom of page 36 and 37 of our brief. And they recognize that, Judge Babi, do you want to say something? No. No, okay, I'm sorry. They make the point that the abandonment encompasses a large, large group of very unfortunate people, including those with mental disabilities. And therefore, it's not evidence that Mexican society considers the group socially distinct. That's in contrast to the case in Asbertos Granados relied heavily on by petitioner. In that case of our Guatemalan, there was evidence that the Guatemalan people call people with mental disabilities locos, which seems a lot more specific to people with mental disabilities. There's just not the equivalent with respect to Mexican society. And it's his burden to come up with evidence that the Mexican society views the group as socially distinct. And he also talks about a 2017 bill addressing the plight of the mentally ill in Mexico. But there's no evidence that that bill actually became law in Mexico. And the Allegius Allegius case I just talked about also mentions that as well. So that's just two big things of evidence for social distinction. And I'm afraid that it just doesn't cut it with respect to cat. I mean, the agency properly concluded that that there was just that he did not show the demonstrate likelihood of that he would be tortured if returned to Mexico. I mean, there's no evidence that he'd ever been involuntarily institutionalized. There's no evidence he ever had like problems with the law or there's his arrest for possessing a fake I.D. in which here in the United States when somebody else was driving the car, he appears to get along with people. He doesn't abuse alcohol or drugs. And he's been supporting himself for quite a long time. Counsel says that we just can't be sure that his recollections are accurate because of his schizophrenia. But I would respectfully point out that he he claims twice in the record that when he was in when he was in immigration custody, he was participating in a clinical trial of a drug called Olanzapine. Hope I'm pronouncing that correctly. And he said it was 20 years ago. And I looked it up and that's historically accurate. I mean, the drug Olanzapine was approved by both United States and Mexican governmental officials in the late 1990s. So it would have been around 2000 when he claims it would have been the clinical trial mode. So either petitioner is a student of the history of psychiatric medicine or that actually happened. So he took this drug voluntarily and never claimed he was abused, never claimed he's afraid to go back. So, I mean, I mean, again, it's his burden. I understand he's got problems with reality, but without any proof, it's all speculation whether he would be abused. So, I mean, again, so I would just respectfully submit that he just sadly just did not meet his burden of proof. Those are my points. I only have a little bit of time left. Is there anything I can answer from the court? No. Thank you, counsel. Thank you very much. Thank you. I would like to address the point about exhaustion being different from waiver or forfeiture first. So while they may be, you know, related but different principles, both concepts share the same underlying principle, which is that we want to ensure that the agency has sufficient notice and a reasonable opportunity to pass judgment on an issue and to correct its own errors. Indeed, that's what the Zhang case said. The policy supporting exhaustion is to give the agency an opportunity to resolve a controversy or correct its own errors. And for this reason, this court has actually relied on the precedent on exhaustion to hold that BIA properly found on issue waived. So in a recent decision called Platero v. Garland, the court cited a precedent on exhaustion and said, the BIA correctly found that the petitioner did not meaningfully challenge the IJ's denial of cat relief. Therefore, this court should apply the precedent on exhaustion to this case. And just going back to exhaustion real quick, I want to reiterate that Zhang and its progeny, including Adam Beholder, very much remain good law in this circuit. There's a long line of published decisions spanning almost two decades that cite and rely on Zhang. And that includes the recent case in Gonzalez v. Garland that we included in our 28-J letter, where the court said it was appropriate to find exhaustion in Zhang. Counsel, in Zhang, as I understand it, the BIA affirmed the IJ's opinion without issuing its own opinion. And in that case, that's a look through. That means that the IJ's opinion becomes the opinion of the BIA. That would seem to put that case on a very, very different footing. Your Honor, there's also Adam Beholder, where the same thing happened, where the board made determinations about other forms of relief. But then when it came to cat, the board said, this court said, the single mention of cat in the conclusion of the brief was enough to exhaust all issues relating to the denial of cat. And although cat is a different form of relief than asylum or withholding of removal, but the same principle should apply because the cat has multiple elements to it, showing that someone was tortured and it would be done with the acquiescence of the government. And that it's more likely. And then there's the standard of more likely than not. There are many elements that must be met. But for the court to say the entire denial of cat was exhausted, that necessarily must have meant that all issues that are subsumed within were also exhausted. So what should the board have done in this case with respect to Nexus? Should it have gone back and looked at at arguments that you made before the IJ? It should be reading the transcript to address questions about medication. The board evidently thought didn't find any error in the findings of the IJ. So why what would there be for them to do? The board could have, you know, review the IJ's decision and, you know, correct the agency's. It could have done so. So it could or could not have done so. It could have. It could have. Yes, your honor. OK, so this is the board's fault for not addressing these things. But if there's no but if there's no contention from you that there's any clear error in any of the findings of the IJ, what's left for the board to do? Well, again, your honor, I would. So the Mr. Peres-Mar and I see that I'm over my time, but I'll just answer the question. So Mr. Peres-Mar unambiguously said the IJ's denial of withholding removal and asylum was wrong and asked the board to grant him to reverse that denial and grant him relief. So the board could have gone back and looked at the IJ's decision and the different elements and, you know, decided to correct its own errors, which is what exhaustion is all about. These were these were findings of fact that they were very, very specific. And that that would be the board has noted in paragraph two of its own decision that they would view that under a clear error standard. Since you haven't offered any argument whatsoever about those things, what would the board find was clear error? Well, your honor, as much as I would have liked to make, you know, arguments about nexus on the merits. Again, I we I think that would have been inappropriate for us to do in our opening brief and our reply brief before this court, because the court's review is limited to the grounds that the board explicitly relies on. The government says that your remedy is to is to reopen and probably have to file under matter of Lozano. You probably have to file a complaint against the against the attorney. Why isn't that your remedy in this case? Well, your honor, that may also be on, you know, concurrent remedy that's available. But here, you know, this usually not a real productive one, as we know. Yes, your honor. I agree with that statement. And but the petitioner has it has a right to petition this court for review of the agency's decisions and to correct the agency's errors. And here the agency clearly erred in, you know, refusing to, you know, refusing to apply this course binding precedent in Acevedo-Granados v. Garland, which compels a finding of particularity and social distinction. That would go to the PSGs. But how does that help us on nexus? I don't see that Acevedo would have anything to say about nexus. You're that's right, your honor. I wasn't. Why don't you take about 15 seconds to answer Judge Bybee's question since you're over time? Sure. Your honor, I wasn't. Yeah. So Acevedo-Granados doesn't help us with nexus. What does help us with nexus is the cases I mentioned, Zhang and his progeny, the long line of precedent spanning nearly two decades that rely upon Zhang. Thank you. Thank you for your time. And I would like to thank Pro Bono counsel in this case. Pro Bono attorneys do aid the court significantly in their advocacy. So thank you. This matter is now submitted.
judges: McKEOWN, BYBEE, DESAI